**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Law Offices of Crystal Moroney, P.C., | |
|     Plaintiff, | Case No. ___7:19-11594___ |
|     v. | |
| Bureau of Consumer Financial Protection | **VERIFIED COMPLAINT FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF** |
| and | |
| Kathy Kraninger, in her official capacity as Director of the Bureau of Consumer Financial Protection, | **\| JURY TRIAL DEMANDED \|** |
|     Defendants. | |

Plaintiff Law Offices of Crystal Moroney, P.C. ("Ms. Moroney's Law Firm") submits this Complaint for Permanent Injunctive and Declaratory Relief to prohibit Defendant Bureau of Consumer Financial Protection, also known as the Consumer Financial Protection Bureau ("the Bureau" or "CFPB"), and Defendant Director Kathy Kraninger, from perpetuating a lawless and retaliatory Civil Investigative Demand against Ms. Moroney's Law Firm, and alleges as follows:

<u>**INTRODUCTORY STATEMENT**</u>

This case presents a unique opportunity for the Court to speak with constitutional clarity regarding the fundamental right to due process and its greatest antagonist—bureaucratic lawlessness. CFPB's actions in this case offer an object lesson on what happens to civil liberties when an administrative agency lacks any semblance of control or oversight from the executive or legislative branches. Only the judicial branch—and this Court in particular—can restore the Plaintiff's civil liberties by reestablishing constitutional order and commanding respect for due process.

1

CFPB targeted Ms. Moroney's Law Firm for investigation in June 2017 with a Civil Investigative Demand ("CID").  Despite some objections, she substantially complied with the CID, providing numerous documents, communications, and interrogatory responses.  Having procured an independent ethics opinion to guide her, Ms. Moroney's Law Firm only withheld information which she could not disclose without violating legal doctrines and ethical canons that protect her clients' confidentiality.  With the two parties at an impasse, CFPB brought an action in this Court to force Ms. Moroney's Law Firm to produce the privileged material.  But just four days prior to a hearing on the merits that promised to conclusively resolve the issue— one which included Ms. Moroney's Law Firm's challenge to CFPB's constitutional authority— the Bureau peremptorily withdrew the CID.  So, one and a half years and nearly $75,000 in legal fees after CFPB began its investigation, the Bureau said that the Court "must" dismiss the case before it, for there was nothing left to decide.

CFPB's mootness claim proved disingenuous and strategic.  Within hours of the dismissal, CFPB announced that it would issue a ***second*** CID, which proved to be nearly identical to the first.  CFPB thus circumvented judicial review and evaded Ms. Moroney's Law Firm's assertions that CFPB had no authority to conduct investigations or enforce CIDs.  After issuing the second CID to Ms. Moroney's Law Firm, the Bureau further turned the screws on her by serving third-party CIDs upon her clients.  The issuing of serial CIDs to the Plaintiff and the punitive publicizing of CFPB's baseless accusations to her clients smack of brazenly unconstitutional abuses of process.

While due process may be difficult to define, Justice Oliver Wendell Homes said it best:

> Whatever disagreement there may be as to the scope of the phrase "due process of law" there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard.[1]

---

[1] *Frank v. Magnum*, 237 U.S. 309, 347 (1915).

CFPB has denied the Plaintiff—and continues to deny her—both a fair trial and an opportunity to be heard on her claims and defenses.  Additionally, it has violated her due process right to be free from governmental harassment by issuing redundant CIDs and by advertising its serial investigations to her clients as an end-run to coerce disclosure of privileged communications.

It is not difficult to imagine how CFPB's blatantly lawless behavior came about given the unconstitutional void of accountability there.  With respect to CFPB funding, Congress divested itself of its Article I, § 9 exclusive prerogative to appropriate funds from the Treasury to all government operations.  CFPB's funding comes from its unilateral requisition of up to 12% of the Federal Reserve System's operating expenses—nearly half a billion dollars annually— without congressional appropriation.[2]  Congress is even prohibited from reviewing CFPB's use of these funds.[3]  This funding mechanism violates the Appropriations Clause, Article I, § 1 of the Constitution (which vests "All legislative Powers," including the appropriations power, in Congress)—and thus the Nondelegation Doctrine.

CFPB's structure is also constitutionally repugnant because it violates the Take Care and Appointments Clauses of Article II.  Though an executive branch agency, the Bureau has a single Director at its helm.  The President cannot remove the Director, but for cause.[4]  The President, therefore, cannot control CFPB's policy recommendations or exercise effective control or oversight of its enforcement activities or its financial operating plans or forecasts.[5]  Either of these defects alone—financial autonomy from Congress or policy autonomy from the President—would be fatal to CFPB's continued operation, to the extent each is inseverable from

---

[2] 12 U.S.C. § 5497(a).
[3] 12 U.S.C. § 5497(a)(2)(C).
[4] 12 U.S.C. § 549 1 (c)(3).
[5] *See, e.g.*, 12 U.S.C. §§ 5492(c)(4) & 5497(a)(4)(E).

the statutory scheme. Thus, CFPB has no jurisdiction. It has no authority to act. The Plaintiff attempted to make these arguments at the November 8, 2019 merits hearing in this Court, but she was thwarted by the agency's bad-faith claim that the issues were moot.

With a second investigation hanging over her head, Ms. Moroney's Law Firm's claims against CFPB are decidedly ***not*** moot. It is time for CFPB to face the judicial scrutiny that it so contemptuously circumvented on November 4, 2019. Serial investigations of Ms. Moroney's Law Firm and the punitive harassment of her clients has left her reputation in tatters and her business on the brink of insolvency. The Plaintiff's request of this Court is a simple one, grounded in familiar notions of fundamental fairness. Ms. Moroney's Law Firm merely asks for the opportunity to present evidence of an astonishing abuse of process by a rogue federal agency,[6] and to have her evidence judged on a level playing field before an impartial tribunal.

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, and 2201.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## PARTIES

3.      Plaintiff Law Offices of Crystal Moroney, P.C. is a law firm organized under the laws of the State of New York with a principal place of business in New City, New York. Among other legal services, Ms. Moroney's Law Office assists her clients in resolving delinquent debt accounts by offering debtors alternative ways to amicably resolve their delinquencies.

---

[6] CFPB is facing dissolution in an appeal awaiting argument in the United States Supreme Court. *Seila Law, LLC v. Consumer Financial Protection Bureau*, No. 19-7 (U.S. *argument pending* Mar. 3, 2020) (cert. granted to consider whether (1) CFPB is unconstitutionally structured; and (2) if it is unconstitutionally structured, whether the unconstitutional structure is fatal to the entire agency).

4.      Its majority shareholder, Crystal G. Moroney, Esq., is a member in good standing of the New York and New Jersey state bars.  Ms. Moroney is the only attorney in her law firm that currently employs a staff of nine.

5.      Defendant Bureau of Consumer Financial Protection is an independent executive agency of the United States of America.  It regulates consumer financial products and services and it is headquartered in Washington, District of Columbia.

6.      Defendant Kathy Kraninger is the Director of the Bureau of Consumer Financial Protection.  She is sued in her official capacity.

### Administrative Proceedings

7.      CFPB issued a Civil Investigative Demand ("CID") to Ms. Moroney's Law Firm on November 14, 2019.

8.      Ms. Moroney's Law Firm filed a timely Petition to Set Aside Civil Investigative Demand (the "Petition to Set Aside") with CFPB.  The Petition to Set Aside is attached as Exhibit A.  The Petition to Set Aside preserves the Plaintiff's right to object to the demands of the CID, without conceding that CFPB has proper jurisdiction or the lawful power to issue or enforce the CID in the first instance.

9.      This Complaint differs from the Petition to Set Aside in that it seeks injunctive and declaratory relief from this Court—relief that the Bureau cannot award.

10.      In the matter before this Court, the Plaintiff will offer evidence that CFPB's investigatory tactics and actions unconstitutionally deprived the Plaintiff of her right to due process and that the unconstitutional tactics and actions are likely to be repeated without judicial intervention.

11. The Plaintiff will also offer evidence that CFPB itself is unconstitutional and without jurisdiction to initiate investigations of Ms. Moroney's Law Firm or enforce CIDs against her or third parties. As such, it cannot lawfully adjudicate Ms. Moroney's Law Firm's pending Petition to Set Aside.

<strong>FACTUAL ALLEGATIONS</strong>

**A. The Defendants Have Denied the Plaintiff's Right to Due Process**

12. Two and a half years ago, CFPB issued a Civil Investigative Demand to Ms. Moroney's Law Firm (the "First CID"). CFPB's June 23, 2017 CID is attached as Exhibit B.

13. The First CID sought three and a half years of documents, tangible things, written reports, and answers to questions. Ms. Moroney's Law Firm noted several objections to the First CID, including the demands' lack of proportionality, the onerous deadlines imposed, the extensive scope in time and materials requested, and the insufficient Notice of Purpose provided with the First CID.

14. But these issues paled in comparison with Ms. Moroney's Law Firm's principal concern: CFPB's demand for documents and information protected from disclosure by nondisclosure privileges and doctrines, including the attorney-client communication privilege.

15. The parties were able to negotiate mutually acceptable solutions to most of these contentions, but it became clear in September 2018 that CFPB was intractable when it came to its demand for privileged material. To break the impasse, Ms. Moroney's Law Firm engaged ethics counsel for independent advice on the issue.

16. Ultimately, she concluded that it was her Rule 1.6 ethical duty under the New York and New Jersey Codes of Professional Conduct to protect the confidentiality of attorney-client privileged material. But, in yet another effort to accommodate CFPB, she asked her clients

6

if each would waive the privilege.  Despite that Ms. Moroney's Law Firm's clients (owners of the privilege) refused to waive it, CFPB insisted that she violate her legal ethics and turn over the privileged documents.

17.     In the end, Ms. Moroney's Law Firm substantially complied with the First CID by providing written responses and producing thousands of pages of documents and data.  The only documents she refused to produce were those protected by attorney-client nondisclosure principles or those where nonprivileged and privileged materials were inextricably intertwined. Accordingly, Ms. Moroney's Law Firm withheld responses to Interrogatory No. 12, Written Reports Request Nos. 1-5 and 7, Document Request Nos. 2, 6, 12, and 14, and Tangible Things Request Nos. 1-4.

18.     On January 9, 2018, CFPB informed Ms. Moroney's Law Firm that it intended to enforce the First CID unless she violated her Rule 1.6 duty of confidentiality.  The Bureau waited more than a year to file its Petition to Enforce Civil Investigative Demand in the United States District Court for the Southern District of New York (the "CFPB Petition").  The CFPB Petition is attached as Exhibit C.

19.     Although CFPB initiated its Petition to obtain judicial review of its investigation on February 25, 2019, it chose not to serve the CFPB Petition on Ms. Moroney's Law Firm. Instead, Ms. Moroney's Law Firm became aware of the CFPB Petition on September 10, 2019, after the Honorable Nelson S. Román issued an Order to Show Cause, setting a hearing on the merits for November 8, 2019 (the "Judicial Review Hearing"), and ordering the Bureau to properly serve Ms. Moroney's Law Firm with the CFPB Petition.

20.     Objecting to the CFPB Petition, Ms. Moroney's Law Firm asserted (among other things) that she substantially complied with the First CID and, perhaps more importantly, she

identified constitutional defects in CFPB's enabling statute that rendered CFPB without legal authority to enforce the First CID.  Ms. Moroney's Law Firm's Response to Order to Show Cause is attached as Exhibit D.

21.     After two Court-granted extensions—and just three days prior to the Judicial Review Hearing—CFPB filed a Notice of Petitioner's Withdrawal of the Civil Investigative Demand and Suggestion of Mootness ("Suggestion of Mootness").  The Suggestion of Mootness voluntarily quashed the First CID, and it is attached as Exhibit E.

22.     CFPB's "Suggestion of Mootness," however, was not as innocuous as its title might imply.  The motion unabashedly asserted that its voluntary withdrawal of the First CID meant that "the Court ***must*** dismiss [the Judicial Review Hearing] for lack of subject-matter jurisdiction."  Not. of Pet. Withdrawal of the Civil Investigative Demand & Suggestion of Mootness, *CFPB v. Law Offices of Crystal Moroney*, Case No.: 7:19-cv-01732-NSR, at 1 (Nov. 4, 2019) (emphasis added).

23.     Relying upon CFPB's representation that the claims and defenses before the Court no longer represented an ongoing controversy, the Court dismissed its scheduled Judicial Review Hearing, denied the enforcement action as moot, and closed the case on November 7, 2019.  At the time, neither this Court nor Ms. Moroney's Law Firm could have known that the case before it was, in fact, decidedly ***not*** moot.

24.     Within hours of this Court's canceling of the Judicial Review Hearing, CFPB announced its intention to serve another CID on Ms. Moroney's Law Firm (the "Second CID"), which Ms. Moroney's Law Firm received on November 18, 2019.  CFPB's November 7, 2019 e-mail announcement is attached as Exhibit F and the Second CID is attached as Exhibit G.

25.     Upon receipt of the Second CID, Ms. Moroney's Law Firm filed a Request for a Pre-Motion Conference with Judge Román.  The Request for a Pre-Motion Conference is attached as Exhibit H.  Judge Román convened the conference to decide whether he should amend his order dismissing the matter.

26.     At the pre-motion conference, CFPB's counsel candidly admitted that the Second CID is "seeking largely the same information[,]" as the First CID.  Conf. Tr. at 7, *CFPB v. Law Offices of Crystal Moroney*, No. 19-CV-1732 (NSR) (Nov. 21, 2019).  The transcript of the pre-motion conference is attached as Exhibit I.

27.     Ms. Moroney's Law Firm has since met and conferred with CFPB regarding the Second CID.  She filed a Petition to Set Aside the Second CID with CFPB to preserve her right to object to the substance of the CID, without waiving her right to challenge the constitutionality of CFPB's abuse of the CID process or the constitutionality of the Bureau itself.

28.     At bottom, CFPB acted in bad faith by failing to satisfy its duty of candor with the Court to explain that while it withdrew the First CID, a Second CID was forthcoming that was substantively identical to the first.  In so doing, CFPB denied the Plaintiff her due process right to a fair trial and an opportunity to be heard.

**B.  The Defendants Are Unlawfully Abusing Their Supposed Investigative Authority in a Way that Threatens to Destroy Plaintiff's Business**

29.     In addition to harassing the Plaintiff with serial CIDs, CFPB has been conducting its investigation into Ms. Moroney's Law Firm through other malicious means.

30.     On information and belief, CFPB has issued CIDs to at least one of Ms. Moroney's Law Firm's clients.

31.     On information and belief, CFPB has issued CIDs to at least one of Ms. Moroney's Law Firm's clients' clients—organizations with whom the Plaintiff has no relationship.

32.     On information and belief, CFPB issued CIDs to these third parties to elicit information about the Plaintiff, not to conduct legitimate investigations of the third parties themselves.  These CIDs are principally targeting the confidential attorney-client communications that Ms. Moroney's Law Firm refused to provide in response to the First CID.

33.     Had CFPB allowed the Judicial Review Hearing to play itself out in November 2019—along with the due process that attends such a proceeding—the rights and duties of the parties already would have been decided by now.  Either the Plaintiff would have been compelled to produce her clients' privileged material under court order, or CFPB would have modified or rescinded the First CID.

34.     Instead, CFPB manufactured a circumstance in which it could circumvent judicial review.  Avoiding judicial scrutiny enabled it to reopen its investigation and renew its demands for responsive materials—not to regulate consumer financial products and services, but to harass and antagonize the Plaintiff by destroying her reputation and business.  Without immediate judicial intervention, it will continue these unlawful practices with impunity.

**C.  CFPB's Funding Mechanism and Organizational Structure Are Unconstitutional**

35.     That CFPB would abuse process to further its own ends is hardly surprising, given that its Director is not controlled, supervised, or even monitored by anyone in the United States government.

36.     The Bureau of Consumer Financial Protection is an "independent bureau" within the Federal Reserve System.  12 U.S.C. § 5491(a).  Formally, CFPB is an agency under the auspices of the executive branch of the federal government.  5 U.S.C. § 105.

37.     CFPB's mission is to implement and enforce federal consumer financial law.  12 U.S.C. § 5511(a).  CFPB accomplishes its mission by exercising executive authority (*e.g.*, initiating investigations and enforcement actions under 12 U.S.C. §§ 5562 & 5564), legislative authority (*e.g.*, issuing rules, orders, and guidance under 12 U.S.C. § 5512(b)), and judicial authority (*e.g.*, conducting hearings and adjudications under 12 U.S.C. § 5563(a)).

38.     A single Director serves as head of CFPB.  12 U.S.C. § 5491(b)(1).

39.     The President of the United States appoints the Director with the advice and consent of the United States Senate.  12 U.S.C. § 5491(b)(2).  The Director's term is five years. 12 U.S.C. § 5491(c)(1).

40.     Despite CFPB's being an executive agency, the President may only remove the Director for inefficiency, neglect of duty, or malfeasance in office.  12 U.S.C. § 5491(c)(3).

41.     Despite CFPB's being an executive agency, the President may not control its legislative recommendations, testimony, or comments on legislation submitted to Congress. 12 U.S.C. § 5492(c)(4).

42.     CFPB does not receive appropriations from Congress.  Each year or each quarter, the Federal Reserve Board of Governors transfers funds from the combined earnings of the Federal Reserve System to finance CFPB's operations.  12 U.S.C. § 5497(a)(1).

43.     The amount of CFPB's funding is determined by the Director without oversight or input from the Board of Governors or the President.   12 U.S.C. § 5497(a)(1).  Moreover, the Bureau's funding is not reviewable by Congress.  12 U.S.C. § 5497(a)(2).  Even the Committees

11

on Appropriations of the House of Representatives and the Senate are barred from exercising

funding oversight.  12 U.S.C. § 5497(a)(2).

**D.  Congress Designed CFPB to Be a Thoroughly Autonomous Agency Within the Executive Branch—Severing Its Unconstitutional Autonomous Features Would Defeat that Central Design**

44.     CFPB's enabling statute is Title X of the Consumer Financial Protection Act, also

known as the Dodd-Frank Act.

45.     Congress created an agency that was "completely independent, with an

independently appointed director, an independent budget, and an autonomous rulemaking

authority."  156 Cong. Rec. H5239 (2010) (Rep. Maloney).  The purpose of Title X was to

"create a consumer bureau … that is independent," 156 Cong. Rec. S5871 (2010) (Sen. Cardin),

in order to "improv[e] regulatory independence," S. Rep. No. 111-176, at 24 (2010).

46.     The statutory text further reflects Congress's creation of "an independent bureau."

12 U.S.C. § 5491(a).

47.     Congress did not design CFPB to be governed in any manner other than through a

completely independent Director.  It will take an act of Congress to change Title X's governing

structure.

**E.  The Plaintiff Is Suffering Irreparable Harm at the Hands of the Defendants' Unauthorized and Endless Serial Investigations**

48.     Ms. Moroney's Law Firm will be irreversibly damaged if the Bureau is allowed to

serially open, withdraw, and reopen investigations to avoid judicial review.  CFPB lacks the

authority to investigate.  Even if it could lawfully investigate, it could not lawfully deprive Ms.

Moroney's Law Firm of her right to be heard or to be free from harassment.

49.     Absent injunctive relief, Ms. Moroney's Law Firm will be forced to continue to

defend claims she was prepared to defend in this Court in November, were it not for the Bureau's

bad-faith manufactured mootness.  Her small business spent almost $75,000 and sunk precious human resources in complying with the First CID, and she now has nothing to show for it.  She is back at square one because CFPB manipulated the system to avoid judicial review.  Absent injunctive relief, the viability of Ms. Moroney's Law Firm hangs in the balance.

50.     The Bureau asserts jurisdiction over Ms. Moroney's Law Firm, but CFPB is neither funded through congressional appropriations, nor does the President have the right to remove the Director or manage the policy priorities of the agency.  Because CFPB cannot operate with such fundamental constitutional defects, the harm caused by these Appropriations Clause, Article I, § 1 / Nondelegation, and Take Care Clauses problems present immediate, ongoing, and irreparable injury to the Plaintiff.

51.     In manufacturing mootness in bad faith, the Bureau tricked the Court into believing that the claims and defenses related to the First CID were no longer in controversy.  That was not true, and CFPB knew that it was not true.

52.     A deprivation of constitutional rights requires no further showing of irreparable injury, as deprivation of rights are inherently noncompensable.  *See, e.g.*, *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984).

53.     The damage wrought by the Bureau's CIDs to Ms. Moroney's Law Firm's clients is not speculative—it is all too real.  She has spent roughly $75,000 on the First CID.  Her revenue has declined due to the CID's demands on her time and the uncertainty associated with an invasive government investigation.  Indeed, there has been collateral damage as well.  She employed 17 staff members before the First CID, eight have lost their jobs since then.

## FIRST CAUSE OF ACTION | DENIAL OF DUE PROCESS

54.     The Plaintiff realleges and incorporates by reference the allegations contained in her Introductory Statement and paragraphs 1 through 53, as if fully set forth herein.

55.     The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall … be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.

56.     Ms. Moroney's Law Firm has a substantial liberty interest in receiving a fair trial before an impartial tribunal to defend against CFPB's accusation that she failed to meet her civil statutory duties.

   a.     The Bureau used the mootness doctrine in bad faith to circumvent a judicial determination regarding whether the Plaintiff complied with her duty to disclose information pursuant to the First CID.

   b.     Thus, CFPB violated the Plaintiff's right to due process.  The Court's intervention is necessary to prevent the Bureau from repeating this violation.

57.     Ms. Moroney's Law Firm has a substantial liberty interest in being heard regarding her claims that CFPB is unconstitutional and has no authority to petition any court to enforce its investigative demands.

   a.     CFPB invoked the mootness doctrine in bad faith to circumvent a judicial determination regarding whether CFPB's structure is consistent with the Appropriations Clause, Article I, § 1 (the Nondelegation Doctrine), and Take Care Clause.

   b.     Thus, CFPB violated the Plaintiff's right to due process.  The Court's intervention is necessary to prevent the Bureau from repeating this violation.

58.     Ms. Moroney's Law Firm has a substantial liberty interest in being free from governmental harassment, intimidation, and ploys to destroy her reputation and business.

a.      CFPB issued CIDs to the Plaintiff's clients to acquire the privileged documents it could have been awarded on the merits of CFPB's claim, had the Bureau permitted the Court to decide the case at the November 8, 2019 hearing.

b.      CFPB's contact with the Plaintiff's clients is an unlawful attempt to use third-party discovery to acquire information it otherwise could have acquired through the judicial process, had CFPB not manufactured mootness in bad faith to avoid judicial scrutiny.

c.      Thus, CFPB violated the Plaintiff's right to due process.  The Court's intervention is necessary to prevent the Bureau from repeating this violation.

59.     Thus, Ms. Moroney's Law Firm seeks declaratory and injunctive relief to restore her right to due process.

**SECOND CAUSE OF ACTION | VIOLATION OF THE NONDELEGATION DOCTRINE**

60.     The Plaintiff realleges and incorporates by reference the allegations contained in her Introductory Statement and paragraphs 1 through 59, as if fully set forth herein.

61.     Under the Vesting Clause of Article I, "*All* legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. I, § 1 (emphasis added).  Statutes that divest Congress of legislative power by conferring it upon another entity violate the Constitution.  *See Loving v. United States*, 517 U.S. 748, 758 (1996).

62.     The Constitution also commands that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9.  Thus, since all appropriations must be made pursuant to law, and since Congress cannot convey its

lawmaking power, the appropriations power is subject to the Vesting Clause and implicates the Nondelegation Doctrine.

63.     Congress' power to appropriate, often called "the power of the purse," serves the "fundamental and comprehensive purpose" of "assur[ing] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good[.]" *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 427-28 (1990).

64.     Under Title X of the Consumer Financial Protection Act, Congress does not appropriate funds to operate CFPB.  Instead it ceded that authority to the Federal Reserve.  This divestment of core legislative power precludes Congress from controlling or supervising the Director's and the Bureau's policy priorities and enforcement activities.

65.     Congress violated the Nondelegation Doctrine by unconstitutionally ceding its exclusive authority to make appropriations by law.  CFPB, therefore, is unconstitutional as currently funded.

66.     The entire statutory scheme fails due to its unconstitutional funding defect.  Title X is not susceptible to severing the funding defect because Title X's "severability clause does not give the court the power to amend a statute."  *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018) (internal quotations and citations omitted).  Furthermore, the Court is not empowered by the Constitution to fund CFPB any more than the Federal Reserve is empowered to do so.  Neither of those entities has appropriations power.

67.     By ceding the power of the purse to the Federal Reserve and prohibiting congressional review, Congress almost hermetically sealed itself off from CFPB.  Rewriting Title X to make Congress appropriate funds where it already decided it did not want to appropriate funds, would radically alter CFPB by making it far less independent from political

16

accountability.  Congress might not approve of a rewriting of the funding mechanism to give itself more authority.

68.     Since the defective funding mechanism for CFPB lies at the heart of the statute, Title X should be struck in its entirety.

69.     An ineffectual grant of executive authority to administrative agencies by reason of a violation of the Nondelegation Doctrine renders all agency attempts to exercise power, void. *See FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993) (holding that where an agency's structure is unconstitutional, the party successfully challenging the constitutionality of the statute must be afforded relief).

70.     It is necessary and proper for the Court to make a judicial determination at this time regarding whether Title X of the Consumer Financial Protection Act unconstitutionally violates the Vesting Clause of Article I, § 1 and hence the Nondelegation Doctrine.  If it is indeed unconstitutional, as the Plaintiff alleges, then CFPB has no legal authority to conduct its enforcement investigation against Ms. Moroney's Law Firm or her clients.

### THIRD CAUSE OF ACTION | VIOLATION OF THE APPOINTMENTS AND TAKE CARE CLAUSES

71.     The Plaintiff realleges and incorporates by reference the allegations contained in her Introductory Statement and paragraphs 1 through 70, as if fully set forth herein.

72.     "The principle of separation of powers is embedded in the Appointments Clause." *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 988 (2d Cir. 1991).  Congress may distribute the power to appoint, but it may not reserve the power to appoint—or the power to remove—for itself.  *Id.*

73.     The President's power to remove subordinate officers is a constitutional

mechanism to hold executive department officials accountable.  *See Free Enter. Fund v. Pub.*

*Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010).

74.     Under Title X of the Consumer Financial Protection Act, the President may only

remove the Director for cause.  This precludes the President from controlling or supervising the

Director's and the Bureau's policy positions and enforcement activities.  To the extent that the

CFPB Director wields executive powers—and it is undisputed that she does—those executive

powers must be subject to presidential control under the Take Care Clause of Article II.

75.     Thus, Congress violated the Take Care Clause of Article II, § 3 by

unconstitutionally limiting the President's ability to remove the Director at the President's

discretion. *See id.* at 484.

76.     The Southern District of New York has already decided this issue in *CFPB v. RD*

*Legal Funding, LLC*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018).  The *RD Legal Funding* court

quoted then-Judge Brett Kavanaugh's dissent in *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881

F.3d 75 (D.C. Cir. 2018), to explain that: "[CFPB] is unconstitutionally structured because it is

an independent agency that exercises substantial executive power and is headed by a single

Director." *PHH Corp.*, 332 F. Supp. 3d at 784.

77.     Judicial comity requires that this Court follow the decision of the Court's intra-

district colleague in *RD Legal Funding*.  *American Scantic Line, Inc. v. United States*, 27 F.

Supp. 271, 272 (S.D.N.Y. 1938).  Courts typically rule in a consistent fashion with intra-district

precedent "without examination or discussion, absent 'unusual and exceptional circumstances.'"

Joseph W. Mead, *Stare Decisis in the Inferior Courts of the United States*, 12 Nev. Law J. 787,

800-01 (2012) (quoting *Johns v. Redeker*, 406 F.2d 878, 882 (8th Cir. 1969) and citing more than

a dozen cases in a wide variety of federal jurisdictions).

79.     Moreover, the issue of CFPB's unconstitutional structure does not present

"unusual and exceptional circumstances," as the Defendants agree with the holding of *RD Legal*

*Funding*.  Indeed, the Defendants admit that "the statutory restriction on the President's authority

to remove the Bureau's Director is unconstitutional[.]"  *See* Brief for Resp. Sup. Vacatur, *Seila*

*Law LLC v. CFPB*, S. Ct. No. 19-7, at 8 (Dec. 9, 2019) (CFPB Brief arguing against the single-

Director structure but in favor of severing the single-Director provisions).

79.     The *RD Legal Funding* court went on to explain that CFPB's entire statutory

scheme fails due to its single-Director defect.  The court held that Title X's "severability clause

'does not give the court the power to amend' a statute.  Nor is it a license to cut out the 'heart' of

a statute."  *RD Legal Funding*, 332 F. Supp. 3d at 784 (quoting *PHH Corp.*, 881 F.3d at 200

(Henderson, J., dissenting)).  The *RD Legal Funding* court concluded that the single-Director

feature was at the heart of the statute, so Title X should be struck in its entirety.  *Id.*

80.     The *RD Legal Funding* court was correct to invalidate CFPB because the question

before it was whether Congress would have enacted the balance of the statute independently of

the single-Director scheme.  *See Murphy v. NCAA*, 138 S. Ct. 1461, 1482 (2018).  Rewriting

Title X to make the Director removable would have radically altered CFPB by making it far less

independent from political accountability, which was Congress' goal in enacting the Consumer

Financial Protection Act.

81.     An ineffectual grant of executive authority to administrative agencies by reason of

a violation of separation of powers renders all agency attempts to exercise power void.  *See FEC*

*v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993) (holding that where an agency's

structure is unconstitutional, the party successfully challenging the constitutionality of the statute must be afforded relief).

82.     It is necessary and proper for the Court to make a judicial determination at this time regarding whether Title X of the Consumer Financial Protection Act unconstitutionally violates the Take Care Clause of Article II, § 3.  If it is indeed unconstitutional as the Plaintiff alleges, then CFPB has no legal authority to conduct its enforcement investigation against Ms. Moroney's Law Firm or her clients.

### PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for the following relief against the Defendants:

A.     Declaratory judgment that CFPB's actions violate the Plaintiff's right to due process.

B.     Declaratory judgment that CFPB's funding structure violates the United States Constitution's Article I, § 1 Vesting Clause and Article I, § 9 Appropriations Clause (and thus the Nondelegation Doctrine) because it cedes Congress' exclusive Article I prerogative to appropriate, to a third party.

C.     Declaratory judgment that CFPB's funding structure is unconstitutional and not severable from the remainder of Title X of the Consumer Financial Protection Act; thus, CFPB cannot issue or enforce CIDs.

D.     Declaratory judgment that CFPB's single-Director structure violates the United States Constitution's Article II, § 3 Take Care Clause because it usurps the President's prerogative to remove executive branch officers.

E.      Declaratory judgment that CFPB's single-Director structure is unconstitutional and not severable from the remainder of Title X of the Consumer Financial Protection Act; thus, CFPB cannot issue or enforce CIDs.

F.      Injunctive relief permanently enjoining CFPB from enforcing all unresolved CIDs targeting Ms. Moroney's Law Firm, whether directed to the Plaintiff, the Plaintiff's clients, or other third parties.

G.      Injunctive relief permanently enjoining CFPB from investigating, formally or informally, with CIDs or without CIDs, all matters related to the subject and time period investigated by the First and Second CIDs (as determined by the Second CID's Notice of Purpose) that targeted Ms. Moroney's Law Firm, whether investigating Ms. Moroney's Law Firm directly, or indirectly through her clients or other third parties.

H.      Injunctive relief permanently enjoining CFPB and the Bureau's Director from seeking, and the Federal Reserve from granting, funding for CFPB's operations.

I.      For an award for all reasonable attorneys' fees incurred herein.

J.      For costs of this suit incurred herein.

K.      For such other relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues triable by a jury in the above-

entitled action.

Respectfully submitted,

**LAW OFFICES OF CRYSTAL
  MORONEY, P.C.**

Dated:  December 18, 2019

Michael P. DeGrandis
  mike.degrandis@ncla.legal
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
tel.: (202) 869-5208

*Counsel to Plaintiff*
*Pro hac vice admission pending*

22

## VERIFICATION

I, Crystal G. Moroney, am the majority shareholder of the Law Offices of Crystal Moroney, P.C., the Plaintiff in this proceeding.  I have read this Complaint and hereby verify that the contents are true and correct to the best of my knowledge, information, and belief, this 18th day of December 2019.

_Crystal G. Moroney_
Crystal G. Moroney

---

State of New York

County of _Rockland_

Signed and sworn before me on this _18[th]_ day of _December_ 2019 by Crystal G. Moroney.

_Tau Fin_
Notary Public

| SEAL |                    My Commission Expires: _____

TERESA FARIAS
Notary Public, State of New York
No. 01FA6130825
Qualified in Rockland County
Commission Expires July 25, 20_21_

23