1995 WL 412394
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Mark L. BLECHER, etc., et al., Plaintiffs,
v.
DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, et al., Defendants.

No. 92 Civ. 8760 (CSH).
|
July 11, 1995.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

**\*1** This case is before the Court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(b) to dismiss plaintiff's amended complaint. For the reasons set forth below the motion is granted in part and denied in part.

BACKGROUND

The case arises out of a dispute between plaintiffs, eleven owners of residential buildings in New York City (hereinafter the "City"), and defendants, three City government administrative bodies that are concerned with implementing the Senior Citizens Rent Increase Exemption program (hereinafter the "SCRIE" program). The SCRIE program was designed as a form of demand-side housing subsidy for the elderly poor [1]. The program allows senior citizens to apply for tax abatement certificates (hereinafter "TACs") that, subject to eligibility, exempt them from paying rent increases [2]. These TACs can be presented by the elderly tenant to the landlord in lieu of rent increases. Pursuant to New York Real Property Tax Law (hereinafter "RPTL") § 467-b(6), the landlord may then use these TACs to receive a tax abatement for the amount of the exempted rent increase. If the amount of the exempted rent increase exceeds the landlord's total real estate liability, RPTL § 467-b(9) permits the landlord to receive cash reimbursement for the balance of the contractual rent. Such cash reimbursements are known as "Excess SCRIE".

To apply for a tax abatement, the landlord must do little more than present the TACs to the Department of Finance (hereinafter "Finance"). Yet, to apply for Excess SCRIE requires a different procedure. When plaintiffs filed suit on December 4, 1992, the Excess SCRIE application required landlords to submit a significant amount of supporting documentation including:

> ... all certificates issued by HPD setting forth the rent and SCRIE entitlements for each SCRIE tenant, the official DHCR annual rent registration for each SCRIE tenant, all DHCR certificates setting forth changes from the rent as registered annually, the quarterly forms filed with each real estate tax payment, the front and back of each check covering real estate tax payments, and all receipts for real estate tax payments issued by the Finance Department.

Complaint, ¶ 30.

Plaintiffs claim that these procedures mandated for claiming Excess SCRIE cause delays and burdens which violate their due process rights. Thus, they contend that the application procedures are overly onerous by requiring more information than necessary. This burden, they insist, is compounded by difficulties in contacting the SCRIE Office and also the possibility of enduring a comprehensive audit. In addition, plaintiffs argue that they face inordinate and costly delays in receiving their Excess SCRIE reimbursements.

In February 1994, the Excess SCRIE application procedures were changed. Affidavit of Claire Barone, ¶ 9. Defendants contend that these modifications simplify and shorten the excess SCRIE application procedures thereby satisfying plaintiffs' prior grievances and rendering plaintiffs' claims moot. Defendants' Memorandum of Law in Support of Motion for Summary Judgment (hereinafter "Defendants' Memorandum") at 5-25. Plaintiffs agree that the changes to the Excess SCRIE application procedures have partially satisfied their grievances, but maintain that the reformed scheme still violates their due process rights and continues to transgress beyond the pertinent statutory boundaries as set forth in the RPTL and the New York City Administrative Code (hereinafter "Admin. Code"). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary

Judgment (hereinafter "Plaintiffs' Memorandum") at 5-17. In addition, plaintiffs insist that summary judgment would be improper before they have had the opportunity to conduct discovery. Plaintiffs' Memorandum at 17-19.

DISCUSSION

**\*2** Under Fed. R. Civ. P. 56(c) summary judgment may be rendered if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The burden of proving the lack of any genuine unresolved issues of fact lies on the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). Indeed, "[b]ecause granting the motion deprives a party of its day in court and the right to present its cause to a jury, the district court in examining the record must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir. 1989). Nevertheless, "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (citations omitted). Hence, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248 (1986).

*Due process claims*
Defendants assert that summary judgment should be entered in their favor because the February 1994 changes to the Excess SCRIE program render plaintiffs' due process claims moot. Defendants' Memorandum at 5-20.

The prohibition on the federal judiciary from "review[ing] moot cases derives from the requirements of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n.3 (1964) (citations omitted). "The hallmark of a moot case is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983).

Certainly, as plaintiffs argue, in determining the need for injunctive relief it is appropriate to examine the SCRIE system as reformed in February 1994. *See, e.g., Hospital Association of New York State, Inc. v. Toia,* 577 F.2d 790, 798 (2d Cir. 1978). ("The formula to be tested for prospective purposes should be the current, not an outdated, one"). However, this Court is also aware that "... [i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption." *United States v. Oregon Medical Soc.,* 343 U.S. 326, 333 (1952) (citations omitted).

**\*3** Thus, the test for mootness is "... a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways'. A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Phosphate Export Ass'n,* 393 U.S. 199, 203 (1968) (citations omitted). *See also, DeFunis v. Odegaard,* 416 U.S. 312, 318 (1974); *I Appel Corp. v. Munsingwear, Inc.,* 646 F.Supp. 685, 687 (S.D.N.Y. 1986). Hence, in moving for summary judgment on grounds of mootness, the burden is on defendants to demonstrate that their allegedly wrongful behavior is not reasonably likely to reoccur.

Plaintiffs have asserted that they have been deprived of their due process rights by "systematic and unreasonable delays and bureaucratic burdens". Complaint, ¶ 41. Defendants have explained at length how they have attempted to lessen these delay and burdens. Thus, the Excess SCRIE application form has been revised and supposedly simplified, Defendants' Memorandum at 10-14, and the average processing time required by Finance for an Excess SCRIE claim now purportedly stands at six to eight weeks. *Id.* at 14-18. Defendants claim that these changes are sufficient to allow summary judgment in their favor with regard to their alleged violations of plaintiffs' due process rights.

It is true that administrative delays of far longer than six to eight weeks have been held to lie within the bounds of due process. *See, e.g., Schroeder v. City of Chicago,* 927 F.2d 957 (7th Cir. 1991) (eight month delay in fire-fighter receiving disability benefit did not violate due process); *Isaacs v. Bowen,* 865 F.2d 468 (2d Cir. 1989) (nineteen month delay in receiving Medicaid benefits did not violate due process).

Nevertheless, "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. Elroy,* 367 U.S. 886, 895 (1961) (citations omitted). Indeed, the doctrine of "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Thus, the Supreme Court has held that, when a constitutionally protected property interest has been impaired, a balancing test should be employed to determine whether the process was due. *Matthews v. Eldridge,* 424 U.S. 319 (1976).

*Matthews* required that courts assessing the need for a particular procedural safeguard should balance the strength of the individual's private interest combined with the reduction of probable erroneous deprivation that the safeguard would bring, against the cost to the government of granting the procedural safeguard. *Id.* at 334-49. Since defendants seek summary judgment, the burden is on them to demonstrate that "a reasonable jury could not return a verdict for the nonmoving party." *Anderson* at 248.

**\*4** Defendants have failed to meet this burden. Defendants do not dispute that plaintiffs hold a constitutionally protected property interest in receiving their Excess SCRIE. Indeed, the Second Circuit recently held that landlords possess such a property interest. *Kraebel v. New York City Dept. of Hous. Preservation and Dev.,* 959 F.2d 395, 404-05 (2d Cir. 1992). Moreover, plaintiffs' private property interest in this case is especially strong. As the *Kraebel* court declared:

> Kraebel's underlying property interest is of greater significance than is present in most other due process cases. Usually, the property interest claimed by the plaintiff is an entitlement to a benefit conferred by the state to promote certain public policy objectives, such as aiding the indigent or the disabled. In this case Kraebel's elderly tenants would be in that position. Kraebel herself, however is not a supplicant seeking payments made available through a generous bureaucracy; she is a deprived property owner seeking reimbursement for being forced to shoulder the burden of long-deferred contractual payments under the SCRIE program, payments guaranteed to her by the government as a substitute for her right to receive payments directly from her elderly tenants.

*Id.* at 405-06. Thus, the distinctive nature of plaintiffs' property interest must be taken into account when conducting the balancing test mandated by *Matthews*.

In addition, plaintiffs have also cited certain factors that they claim are unnecessarily heightening the probability of erroneous deprivation of their property. Thus, for instance, plaintiffs refer to "the requirement that the owner wait until the end of the calendar year and wait until all TACs for a given building are in hand [before payment of Excess SCRIE]" as well as "the burdensomeness of application forms themselves." Plaintiffs' Memorandum at 6, 11. Defendants have offered no evidence sufficient for summary judgment to refute the strength of plaintiffs' private interest nor to adequately refute the reduction in probability of erroneous deprivation of property alleged by plaintiffs.

With regard to cost to the government, defendants' assert that "[t]he new processing procedures are designed to achieve payment of Excess SCRIE claims in as timely a manner as is currently possible, considering Finance's staffing and current technology, without sacrificing Finance's responsibility for sound fiscal administration." Defendants' Memorandum at 19. However, while this Court attaches much weight to the cost to defendants of adjusting the Excess SCRIE payment system, defendants have not offered any substantial evidence that the costs of adjustment so outweigh the benefits to persuade the Court to render summary judgment in their favor. Hence, defendants have not adequately demonstrated that the February 1994 reforms of the Excess SCRIE payment system were sufficient to make plaintiffs' claim moot. Therefore, summary judgment on plaintiffs' due process claims at this point would be improper.

*Statutory claims*

**\*5** Defendants have also moved for summary judgment on plaintiffs' seventh cause of action which alleges that defendants "have exceeded and acted contrary to their statutory authority." Complaint, ¶ 90. It is well established that "[c]ourts must defer to the action taken by [an] agency which is presumed to be valid." *Sierra Club v.*

*United States Army Corps of Eng'rs,* 772 F.2d 1043, 1051 (2d Cir. 1985) (citations omitted). Thus, an administrative interpretation of a statute is usually considered controlling unless it is unreasonable. *See, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-45 (1984). Nevertheless, in moving for summary judgment defendants have undertaken the burden to demonstrate that their interpretations of the statutes are not unreasonable, which in this context means that the interpretations cannot be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See also, Christianson v. Hauptman,* 991 F.2d 59 (2d Cir. 1993); *Rye Psychiatric Hosp. Center, Inc. v. Shalala,* 846 F.Supp. 1170 (S.D.N.Y. 1994), *modified,* 52 F.3d 1163 (2d Cir. 1995).

Plaintiffs have claimed that since the Department For The Aging ("DFTA") does not issue the TAC directly to Finance, but rather indirectly requires the owner to pass the TAC on to Finance, defendants are acting in violation of the provisions of RPTL § 467-b(4) and Admin. Code §§ 26-406(d), 26-509(c)(4). Complaint, ¶¶ 73-78. RPTL § 467-b(4) states in relevant part:

> Copies of such certificate [the TAC] shall be issued [by DFTA] to the owner of the real property containing the dwelling unit of the head of the household and to the collecting officer [Finance] charged with the duty of collecting the taxes of each municipal corporation which has granted the abatement of taxes authorized by this section.

To plaintiffs, this provision "clearly provides that a certificate indicating the amount of the abatement should be sent *directly* to ... Finance". Complaint, ¶ 73. However, I am not persuaded of that interpretation. Indeed, a literal reading of the statute does not suggest that there is an explicitly created requirement for a direct transfer. Nor, am I convinced that this provision was intended to create a substantive right of action. This is illustrated by the fact that the only reported cases concerning this provision were challenges to its constitutionality, rather than causes of action arising under the statute. *Kraebel,* 959 F.2d 395; *Hirschel v. City of New York,* 460 N.Y.S.2d 438 (1983). Thus, since defendants' interpretation of RPTL § 467-b(4) is not arbitrary or capricious, I will grant this part of defendants' motion for summary judgement.

Plaintiffs' claim that defendants have violated Admin. Code §§ 26-406(d), 26-509(c)(4) by requiring that landlords, rather than the DFTA, should notify Finance of the total amount of tax to be abated. However, this claim is similarly flawed. Complaint ¶¶ 74-78. Although the former provision concerns rent-controlled property and the latter rent-stabilized property, both provisions state:

> **\*6** Prior to the commencement of each fiscal year, the department for the aging shall notify the department of finance of the total amount of taxes to be abated under this section with respect to each property for which rent exemption orders were in effect for all or any part of the preceding calendar year. The commissioner of finance shall make the appropriate adjustment in the real estate tax payable in such fiscal year.

As with RPTL § 467-b(4), there is no explicit statutory language requiring that the DFTA's notification of Finance be direct. Thus, defendants' actions can hardly be classified as arbitrary or capricious. Moreover, there is no evidence to suggest that this section of the Admin. Code was enacted to create the kind of right of action alleged here. Although plaintiffs may allege delay, Complaint ¶¶ 77-78, a due process remedy is still available to them. Therefore, I will grant summary judgment for plaintiffs with respect to defendants' claims under Admin. Code §§ 26-406(d), 26-509-(c)(4).

Plaintiffs have further argued that defendants have violated Admin. Code § 26-406(a) by requiring landlords with rent control SCRIE tenants to file two certificates to receive their Excess SCRIE. Complaint, ¶¶ 79-80. Admin. Code § 26-406(a) states in relevant part, "[t]he rent exemption order shall also constitute the tax abatement certificate." However, as defendants have pointed out, the February 1994 reforms have created a single form, the "Revised Rent Control TAC", which has eliminated the prior requirement for two certificates. *See* Affidavit of Edward Guirguis, ¶ 10. Plaintiffs have not disputed the existence of this reform. Thus, with

regard to plaintiffs' claims under Admin. Code § 26-406(a), I will grant summary judgment for defendants.

Plaintiffs have also claimed that defendants have transgressed beyond the authority granted them in RPTL § 467-b(7) by requiring plaintiffs to demonstrate that their tenants have remained in residence before a payment of Excess SCRIE may be made. Complaint, ¶¶ 81-83. RPTL § 467-b(7) states:

> Upon the vacancy of a dwelling unit for which an abatement certificate has been issued, the owner thereof shall remit a pro rata portion of the tax abatement to the collecting officer of the municipal corporation which granted such abatement and any amount due by reason of such vacancy shall be a lien upon the property on and after the date of such vacancy.

However, this claim is now also moot. Indeed, since the introduction of the Revised Excess SCRIE Application in February 1994, landlords have been able to receive Excess SCRIE payments without having to wait until the end of the current tax period. Affidavit of Edward Guirguis, ¶ 18. Plaintiffs do not dispute that this reform has occurred. Hence, with respect to plaintiffs' claims under RPTL § 467-b(7), I will grant summary judgment for defendants.

An additional claim made by plaintiffs is that the application procedures for Excess SCRIE promulgated by defendants violate Admin. Code §§ 26-404(e), 26-509(c)(5). Complaint, ¶¶ 84, 85. Both of these provisions state, in relevant part, that if applying for Excess SCRIE, "... the owner shall submit with his or her real estate bill and tax remittance, a verified statement in such form as prescribed by the commissioner of finance, setting forth the carry over amount and the amounts previously applied ...." Plaintiffs argue that these statutes "... suggest that the verified statement need [not] be anything more than a calculation of the total amount of SCRIE rent applied in abatement of tax, and the balance still owed to the Plaintiff property owner (Excess SCRIE) ...." Complaint ¶ 85.

**\*7** However, there is no basis for this interpretation in the statutory language. Indeed, the statutes permit the verified statement to be "in such form as prescribed by the commissioner of finance", thereby allowing a degree of flexibility in the specific composition of the statement. Of course, the defendants may not interpret these statutes to create a verified statement that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Nevertheless, defendants have offered a clear accounting for their adopted format of verified statement. *See* Affidavit of Edward Guirguis, ¶¶ 13-22. Thus, with the caveat that plaintiffs' due process claims still stand, defendants' verified statement does not appear to transgress the broad leeway given to administrative agencies in matters of statutory interpretation. Therefore, with regard to plaintiffs' claims regarding alleged violations of Admin. Code §§ 26-406(e), 26-509(c)(5), I will grant summary judgment for defendants.

Plaintiffs' final claim is that defendants have exceeded their statutory authority by requiring that only current owners may apply for Excess SCRIE. Complaint, ¶¶ 86-89. Plaintiffs argue that restricting Excess SCRIE applications to current owners violates RPTL § 467-b(9) and Admin. Code §§ 26-406(e), 26-509(c)(5). Certainly, each of these statutes refer to the "owner" rather than the "current owner". However, as defendants have pointed out, prior owners may apply for Excess SCRIE if they have the written permission of the current owner. *See* Affidavit of Edward Guirguis, ¶ 15. Plaintiffs' objection to this procedure that defendants have mandated for prior owners claiming back Excess SCRIE is more properly a component of their due process claim rather than a claim for a violation of statutory authority. Accordingly, I shall grant defendants summary judgment on this claim.

CONCLUSION

Defendants' motion for summary judgment is granted for plaintiffs' seventh cause of action alleging statutory violations, but is denied for plaintiffs' first and fourth causes of action which assert due process claims.

The parties are directed to attend a status conference on September 21, 1995 at 3:30 P.M. in Room 17C, 500 Pearl Street.

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 412394

## Footnotes

1  The SCRIE program is set out in New York Real Property Tax Law § 467-b and the New York City Administrative Code §§ 26-405.m, 26-406 and 26-509. For a detailed description of the program *see, Kraebel v. Department of Housing Preservation & Development,* 959 F.2d 395, 398-99 (2d Cir. 1992), *cert. denied,* 113 S.Ct. 326 (1992).

2  To be eligible, the head of household must be 62 years old or older, the dwelling must be rent-controlled or rent stabilized, the household income must be no greater than $16,500, the rent (including the increase) must be greater than a third of the household income, and the rent increase must be due to factors other than fuel adjustments or voluntary capital improvements.

---

**End of Document**          © 2020 Thomson Reuters. No claim to original U.S. Government Works.